# RUHNKE & BARRETT
ATTORNEYS AT LAW

47 PARK STREET
MONTCLAIR, N.J. 07042
973-744-1000
973-746-1490 (FAX)

29 BROADWAY
SUITE 1412
NEW YORK, N.Y. 10006
212-608-7949

DAVID A. RUHNKE (davidruhnke@ruhnkeandbarrett.com)   ◊   JEAN D. BARRETT (jeanbarrett@ruhnkeandbarrett.com)

---

REPLY TO <mark>MONTCLAIR</mark> OFFICE

September 14, 2020

> Motion for reconsideration denied.
>
> SO ORDERED.
>
> *[signature]*
> NAOMI REICE BUCHWALD
> UNITED STATES DISTRICT JUDGE
> Dated: New York, New York
>        September 30, 2020

Served and Filed via ECF
Hon. Naomi Reice Buchwald, Senior U.S.D.J.
Moynihan United States Courthouse
500 Pearl St.
New York, N.Y. 10007

      Re:    United States v. Tsani Russell,
                19-cr-00554 (NRB)

Dear Judge Buchwald:

      We are CJA counsel to Tsani Russell. We write respectfully to request that the Court reconsider its August 28, 2019 order denying Mr. Russell's motion for release (ECF No. 7), or, in the alternative, request a bail hearing.

      The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). We respectfully submit that the current health crisis compounded with Mr. Russell's existing medical condition result in a "compelling reason" justifying his release on bail. This is not a "presumption" case where s burden of production is placed on the detainee. Indeed, the "presumption" is that conditions of release may be established.

      Since Mr. Russell's initial motion for bail, the worldwide COVID-19 pandemic has altered the way we live. As of the date of this submission, there are over 6.4 million confirmed cases of COVID-19 in the United States and 184,967 deaths due to COVID-19. See https://covidtracking.com/. Prisons, where social distancing and effective personal sanitation is practically impossible, have been hit particularly hard by this air born virus. See *US prison inmates among those hit hard with COVID-19*, University of Minnesota, Center for Infectious Disease Research and Policy, July 9, 2020 ("COVID-19 cases in US federal and state prisons were 5.5 times higher—and death rates three times higher—than

HON. Naomi Reice Buchwald, Senior U.S.D.J.
September 14, 2020
Page 2

in the general population from Mar 31 to Jun 6, according to a research letter published yesterday in *JAMA*."), a copy is annexed hereto as **Exhibit A**. Indeed, as a result of the seriousness of this virus, social and legal visits at all Bureau of Prison ("BOP") facilities have been suspended since March 2020.

On May 26, 2020, Dr. Homer S. Venters filed a facility evaluation report of the COVID-19 response at the Metropolitan Correctional Center ("MCC") as part of a pending lawsuit against the facility. *See Fernandez-Rodriguez, et al. v. Marti Licon-Vitale*, 20-cv-3315 (ER). A copy of that report is annexed hereto as **Exhibit B**. In his report, Dr. Venters condemned the MCC's response to the virus. He concluded that the "MCC's response to the COVID-19 pandemic suffers from widespread and systemic failures to follow CDC guidelines and basic infection control practices." *Id.* at ¶ 1. Dr. Venters' report details the numerous deficiencies including "grossly inadequate or absent sick call systems, deficient COVID-19 screening and contact tracing, inadequate access to soap and cleaning supplies, and deficient isolation and quarantine procedures." *Id.* at ¶ 2.

The MCC's plan to open its doors to legal visits later this month and family visitors in October, when, the institution is facing new outbreaks of the virus, seems unfathomable. Since May 2020, when NYC's COVID numbers began to level off, the number of inmates who tested positive at MCC has increased over seven-fold, from 5 to 36. *See* **Exhibit C**. As confirmed by MCC bulletins and inmate reports, at the time of their test results, many inmates were housed in at least five different units across the prison, including the open dormitories on 11 South that house as many as 156 inmates, now – aka 156 potential "super spreaders."

Moreover, the MCC has done little to assure the Court – or anyone else – that it is safe to begin on-premises inmate visiting. Indeed, the MCC is unable to offer any improvements by the BOP that have, in fact, provided a measure of safety to visitors or inmates.[1] Assuming that Mr. Russell has not already been

---

[1] Dozens of inmate declarations have been submitted to the Hon. Edgardo Ramos, in connection with the pending law suit against the MCC. *See* ECF No. 51. These declarations speak in great detail to the lack of any systematic approach toward keeping the MCC sanitary and safe in order to identify and slow the spread of the virus. One declaration stated: "I have not had my temperature taken in weeks and no MCC staff has asked me about my symptoms, or even my general well-being, recently. The MCC is still very slow in responding to medical requests. We have to wait a long time after making a sick call request."

HON. Naomi Reice Buchwald, Senior U.S.D.J.
September 14, 2020
Page 2

exposed to the coronavirus – an assumption that may or may not be valid[2] – as inmates who have tested positive are apparently being scattered throughout the MCC, he remains at high risk for severe complications should he contact the virus.

In light of COVID-19, its impact in prison populations and Mr. Russell's existing medical condition, we respectfully ask that the Court reconsider its denial of bail. As evidence on Mr. Russell's Bureau of Prison ("BOP") medical records, Mr. Russell suffers from asthma and uses an Albuterol inhaler. *See* **Exhibit D**. According to the CDC, people with moderate to severe asthma may be at higher risk of getting very sick from COVID-19. COVID-19 can affect the respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease.[3]

During the COVID-19 pandemic, several courts in this district have granted compassionate release requests based on an inmates asthma. *See United States v. Park*, 16-cr-473 (RA), 2020 WL 1970603 (S.D.N.Y. Apr. 24, 2020); *United States v. Smith*, 12-cr-133 (JFK), 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); *United States v. Hernandez*, 18-cr-834 (PAE), 2020 WL 1684062 (S.D.N.Y. Apr. 2, 2020).

As to any concerns of dangerousness, we respectfully submit that Mr. Russell has been incarcerated since July 18, 2019. During this year-plus period, Mr. Russell has received no tickets for disciplinary infractions. We respectfully submit that any allegations of dangerousness or risk of flight have dissipated. *See United States v. Jackson*, 19-cr-356 (RSS) 2020 WL 1905674 (E.D.N.Y. April 17, 2020) (reconsidering bail in light of COVID-19 and granting bail to defendant at inmate at the MDC charged with being a felon in possession and finding that defendant's asthma was a condition associated with severe COVID-19 cases that warranted his release on bail); *United States v. Carr*, 19-cr-137 2020 WL 1872571 (E.D.N.Y. April 14, 2020) (granting bail to defendant awaiting sentencing for narcotics conspiracy because COVID-19's heightened risk where defendant's history of asthma, hypertension and seizures); *United States v. McKenzie*, 18-cr-834 (PAE), 2020 WL 1503669 (S.D.N.Y. March 30, 2020) (granting bond to asthmatic defendant who had been on pre-trial release but

---

[2] Mr. Russell was placed in quarantine for 14 days and at various times told he tested negative as well as positive for COVID-19.

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fasthma.html

HON. Naomi Reice Buchwald, Senior U.S.D.J.
September 14, 2020
Page 2

pled guilty to assault with dangerous weapon and who was subject to mandatory detention while he awaited sentencing).

We propose similar conditions of release as our previous request that we believe address any concerns regarding likelihood of appearance and danger to the community:

1. Mr. Russell will execute a Personal Recognizance Bond ("PRB") in the amount of $100,000;

2. The PRB will be co-signed by two suretors;

3. Mr. Russell will be subject to home confinement and strict pretrial supervision, including electronic location monitoring and reporting on a schedule to be set by the Office of Pretrial Services for this district;

4. Mr. Russell will seek and maintain appropriate employment; and

5. Mr. Russell will abide by all standard condition of release and such other conditions as the Court deems appropriate.

If released, Mr. Russell would live with his girlfriend or his father.

Accordingly, we respectfully request that the Court reconsider its denial of bail for Mr. Russell in this non-presumption case, or in the alternative, schedule a hearing. We also request that if the Court does schedule a hearing, it be conducted remotely.

> Very truly yours,
> /s/
> David A. Ruhnke
> (Ruhnke & Barrett)
> Diane Ferrone
> (Law Office of Diane Ferrone)
>
> Co-counsel to Mr. Russell

cc:   All Parties (via ECF)